STATE OF CONNECTICUT *v.* RAYMOND V. CARDINAL (10711)

HEALEY, PARSKEY, SHEA, GRILLO and F. HENNESSY, Js.

Argued May 11—decision released July 31, 1984

---

*Eugene J. Riccio,* assistant public defender, with whom, on the brief, was *Charles D. Gill,* public defender, for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, were *Dennis A. Santore,* state's attorney, and *John M. Massameno,* assistant state's attorney, for the appellee (state).

PARSKEY, J. The defendant, Raymond V. Cardinal, was charged with kidnapping in the first degree, in violation of General Statutes § 53a-92 (a) (2) (A), and sexual assault in the first degree, in violation of § 53a-70. The jury returned verdicts of guilty on both counts, and the trial court rendered judgment in accordance with the verdicts. The defendant's appeal from the judgment of conviction presents two issues:[1] whether the trial court erred in refusing to suppress evidence obtained in an allegedly illegal arrest, and whether that court erroneously restricted the defendant's right to cross-examine one of the state's witnesses. We find no error.

The jury might reasonably have found the following facts. On March 23, 1980, between 1:30 and 2:30 a.m., the victim and her boyfriend were hitchhiking on route 202 in Litchfield. The defendant, who was driving a red van, stopped to pick them up. The victim's boyfriend opened the front door on the passenger side of the van to allow the victim to enter first. As the victim was entering the van, the defendant drove off at high speed.

---

[1] A third issue presented in the defendant's appeal brief concerned the constitutionality of the Connecticut kidnapping statute, General Statutes § 53a-92 (a) (2) (A). This matter was withdrawn at oral argument.

The victim was standing on the floorboard and hanging onto the door and seat of the vehicle as it sped off. Her boyfriend was left behind at the side of the road. As the van drove off, the victim's boyfriend chased after it and heard the victim scream his name repeatedly. He hitchhiked to a telephone and called the state police, reporting that his girlfriend had been kidnapped.

At about 2:30 a.m., Trooper William R. Allen, who was on patrol duty in a police vehicle, received a radio transmission to be on the lookout for a red van the driver of which had just abducted a woman who was hitchhiking in the Bantam area of Litchfield. Allen drove approximately ten miles to the intersection of route 63 and route 4 in Goshen and parked in a commerical parking lot. Ten minutes later, Allen observed a red van travelling in a normal way along route 4. Knowing that a red van was sought, Allen turned on his flashing red roof lights and followed the vehicle for a quarter mile. The van, driven by the defendant, pulled into a commercial lot where it stopped, and Allen parked behind it.

The trooper walked to the driver's side of the van and asked the defendant for his license and registration. While the defendant was looking for the requested items, Allen observed a girl come up from between the seats or from the back of the van. He saw that the girl's face was cut and bloody, and that the top of her body was naked. Allen observed that she was trying to scream or say something, but though her lips moved, no sound emerged.

Realizing at that point that this must be the van referred to in the radio transmission, Allen drew his service revolver and ordered the defendant out of the van. When the defendant emerged from the vehicle, Allen saw that he was naked from the waist down. As the defendant exited the van, he said to Allen, "[t]his

looks bad, doesn't it?" although Allen had not asked any questions of him. Allen then handcuffed the defendant, placed him under arrest for kidnapping, and advised him of his rights.

## I

The defendant argues that Allen's testimony and any evidence procured as a result of stopping the van should have been suppressed because Allen lacked the articulable and reasonable suspicion necessary to render the stop constitutional. In *State* v. *Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), this court discussed the standard applicable to motor vehicle stops and detentions under the fourth amendment: "The test to be applied . . . is an objective one: 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' *Terry* v. *Ohio,* [392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)]. In justifying the particular intrusion 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* v. *Ohio,* supra, 21." Id., 148–49.

When we apply that standard to the facts in this case, it is clear that Allen acted appropriately in stopping the defendant's van. After receiving a radio transmission to be on the lookout for a red van which had just been used to abduct a young woman, Allen drove directly to a nearby intersection in the vicinity of the reported crime. He had only been there for ten minutes when a vehicle meeting this description appeared. The time was about 2:30 in the morning and there was little traffic on the road. On the basis of the close proximity in time and location, along with the matching

description as to color and type of vehicle, Allen had ample cause to stop the defendant's vehicle to investigate. These circumstances certainly constitute "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry* v. *Ohio,* supra, 21.

## II

The defendant also asserts a violation of his right to cross-examine effectively an adverse witness, guaranteed by the confrontation clause of the sixth amendment to the United States constitution. At trial, the defendant attempted to impeach the credibility of the victim's boyfriend by cross-examing him on various aspects of his psychiatric history. The defendant's questions concerned the witness' honorable disability discharge from the army for a nervous condition, and a recent judicial order that the witness receive psychiatric treatment as a condition of probation in an unrelated criminal case. The court refused to admit this evidence without expert testimony linking those facts about the witness' psychiatric past with his ability to recall events and relate them accurately.

In *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984), this court upheld a trial court's refusal to permit the defendant to examine the psychiatric records of a prosecution witness for impeachment purposes. Although that case raised issues of confidentiality and privilege with regard to psychiatric records which have not been presented here, our discussion of the role such evidence plays in impeaching credibility is on point. "The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. If *as a result of a mental condition* such capacity has been substantially diminished, evidence of that condition before, at and after the occurrence and at the time of the trial, is ordinarily admis-

sible for use by the trier in passing on the credibility of the witness." (Emphasis added.) Id., 176. Thus, in order for evidence of a witness' psychiatric condition to be admissible for impeachment purposes, there must be a showing that the condition substantially affected the witness' ability to observe, recall or narrate events at issue in the trial. See also *State* v. *Storlazzi,* 191 Conn. 453, 459, 464 A.2d 829 (1983) (defendant's access to witness' psychiatric records for impeachment purposes rested on "whether they sufficiently disclose material 'especially probative of the ability to "comprehend, know and correctly relate the truth . . . ." ' ").

In this case, the defendant made no attempt to establish a relationship between the witness' mental condition and his capacity to observe, remember or narrate the events that took place on March 23, 1980. Absent such a showing, evidence of such condition and treatment was properly excluded as irrelevant to the issue of the witness' credibility.

There is no error.

In this opinion the other judges concurred.