STATE OF CONNECTICUT *v.* CURTIS UPSHAW, JR. (2833)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued December 4, 1985—decision released May 6, 1986

*Thomas G. Merrill* and *Margaret E. Flynn,* certified legal interns, with whom was *Todd D. Fernow,* for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

BIELUCH, J. The defendant, Curtis Upshaw, Jr., has appealed from the judgment of the trial court rendered in accordance with a jury verdict finding him guilty of one count of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49, 53a-70.[1] The defendant claims that the court erred (1) in denying his motion for judgment of acquittal after the state had rested its case on the ground that the state had failed to present evidence demonstrating that the defendant had the requisite specific intent to commit sexual assault in the first degree, and (2) in denying his motion to discharge the jury on the ground that the state had committed prosecutorial misconduct by "systematically" exercising its peremptory challenges to exclude all blacks from the jury selected in this case. We find no error.

The jury could reasonably have found the following facts. The complainant arrived at the Greyhound bus terminal on George Street in New Haven at approximately 10 p.m. on April 7, 1983. She was returning home from college for the Easter holiday, when she found that the terminal was closed. This prevented her from using the public telephone in the terminal to call for a ride home.

---

[1] The defendant was also convicted of one count of assault in the third degree in violation of General Statutes § 53a-61 (a) (1). He has not appealed from his conviction on that charge. A third count of interfering with an officer, a violation of General Statutes § 53a-167a, was also lodged against the defendant, but that charge was severed from the first two counts prior to trial and is not involved here.

Five or six men were standing outside the terminal, one of whom was the defendant. He told the complainant that if she wanted to get a taxi she should follow him, which she hesitatingly did. The defendant led her around the building toward the rear of the terminal when he suddenly turned to face her, pushed her against a side doorway and held her by the head and neck as well as by the mouth so that she could not cry out. The defendant repeatedly stated to her that he was going to "fuck [her] up a lot of times." He then directed her to walk calmly beside him to the parking lot in the rear, where two buses were parked.

At this point, the complainant removed the defendant's hand from her mouth and, after asking him not to hurt her, offered him $50. He told her that he did not want her money. She then began to struggle. The defendant mistook the complainant's attempt to reach a canister of mace in her knapsack for an effort to reach her purse and began to choke her, repeating that he did not want her money. The complainant then broke free and, as she lunged forward to get out of the doorway, the defendant grabbed her by the waist. When she then screamed, the defendant punched her on the nose, at the same time calling her a bitch and running away.

Having been let loose, the complainant ran toward a cab which was approaching on the street. She asked for and received assistance from the cab driver and his passenger. She pointed the defendant out to the cab driver as they drove toward him, and, despite her opposition, the cab driver radioed to another cab driver, requesting police assistance.

When the police arrived, the complainant accompanied them back to the terminal. She identified the defendant, who was seen walking away from the terminal. The defendant was apprehended, and both he

and the victim were driven to the police station. The complainant was thereafter taken to Yale-New Haven Hospital for medical treatment. She was informed that although her nose was bruised and swollen, it was not broken. From there, she returned to the police station to be photographed and to give a written statement regarding the incident.

The defendant claims error in that the state failed to sustain its burden of proving that he had attempted to commit sexual assault in the first degree upon the complainant. By this claim, the defendant disputes the quality of the evidence against him, and the precise meaning of the declarations of his intention toward the victim. We find this argument to be without merit.

Attempts to commit a crime are punishable pursuant to General Statutes § 53a-49 (a), inter alia, when a person "(2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." In the present case, in order for the defendant to be convicted pursuant to subsection (2) of this statute, he must have intentionally committed an act which constituted a substantial step in a course of conduct planned to culminate in his commission of sexual assault in the first degree. The standard of review by which we measure the defendant's claim is whether, upon our viewing the evidence in the light most favorable to sustaining the jury's verdict, " 'the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); see also *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985).

The defendant first asserts that he did not commit an act which constituted a substantial step toward the commission of sexual assault in the first degree. In support of this argument, he points primarily to the fact that he and the complainant were fully clothed throughout the incident, and that he never actually touched her genitalia with his hand. The evidence showed, however, that he forced his leg between her legs with sufficient force to bruise her genital area. Those facts, however, are not dispositive. "To constitute a 'substantial step,' the conduct must be 'strongly corroborative of the actor's criminal purpose.' . . . 'The application of this standard will, of course, depend upon the nature of the intended crime and the facts of the particular case. . . . This standard properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime.' " (Citations omitted.) *State* v. *Green,* 194 Conn. 258, 276–77, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). In the case here, the defendant concededly committed an assault in the third degree upon the victim. Furthermore, he repeatedly and emphatically declared his intention by the words quoted above to sexually assault her "a lot of times" and declined an offer of money to release her. The defendant attempted to take the young lady to a more secluded location. Additionally, he attacked her with force, restraining her against a doorway, and covered her mouth to keep her from crying out for help. From this evidence, the jury could reasonably have concluded beyond a reasonable doubt that such actions and declarations constituted substantial steps aimed at compelling sexual intercourse, and corroborated an intention to engage in sexual intercourse by the use of force against the complaining witness. Such conduct constituted attempted sexual assault in the first degree, in violation of §§ 53a-49 (a) (2) and 53a-70. *State* v. *Pena,* 1 Conn. App. 344, 346, 471 A.2d 972 (1984).

The defendant's second, and more forcefully pressed, argument on this claim is that the state did not prove that he specifically intended to commit sexual assault in the first degree, as that offense is defined in General Statutes § 53a-70. Rather, the defendant claims, the evidence presented merely demonstrates an intent "to commit some crime other than robbery." The defendant further states that the evidence was insufficient to justify a guilty verdict because it did not "rationally exclude every reasonable hypothesis consistent with innocence and inconsistent with guilt of the charged offense."

We note at the outset that "[t]he fact that a jury . . . could also possibly infer from the facts to be proven at trial that the defendant might have intended to commit a crime other than that charged in the information does not preclude the submission of this case to a jury since there is a reasonable and logical basis for it to infer from the facts to be proven at trial that the defendant had the requisite intent to commit the crime charged." *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984). "Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." Id., 609.

"Since a determination of the defendant's intent involves an examination of his mental state . . . it necessarily must be proved by his statements or actions." *State* v. *Holley,* 174 Conn. 22, 25–26, 381 A.2d 539 (1977); see also *State* v. *Green,* supra, 273. "This is one way of saying that a person's intention is to be inferred from his conduct and the surrounding circumstances." *State* v. *Green,* supra. In the present case, the inference to be drawn from the defendant's violent conduct was bolstered by his emphatic and unequivocal repeated declaration to the victim of his intent to

"fuck [her] up a lot of times."[2] Given the circumstances surrounding the incident in question, the defendant's actions, and his repeated and graphic statement of purpose for apprehending the victim, we conclude that the jury could reasonably have found that the defendant's intent was specifically to commit sexual assault in the first degree upon the complainant.

We conclude that the jury could reasonably have found that the defendant committed a substantial step in a course of conduct planned to culminate in his commission of the crime as required to justify his conviction of attempted sexual assault in the first degree. Thus, the court did not err in denying the defendant's motion for a judgment of acquittal.

The defendant's second claim of error is that the court erred when it denied his motion to discharge the jury after its selection on the ground that the state "systematically" used three of its eight peremptory challenges for the selection of jurors in order to exclude blacks from the jury. The record presented by the defendant in support of this claim consists solely of that portion of the transcript relating to the court's denial of his motion to discharge the jury. The crux of the defendant's claim was that "[the state] has exercised challenges and the result of [its] challenges are that the three blacks who were available for jury duty have been excluded." This, the defendant asserts, is sufficient to constitute a prima facie case of unconstitutional misuse of peremptory challenges by the state. We disagree.

---

[2] The defendant asserts that the definition of the term "fuck" or "fuck up" is not necessarily sexual in nature, and that in the present case it was "wholly devoid of *any* sexual connotation." The circumstances of the expression here give it a meaning "loud and clear" upon which we need not elaborate. Let it suffice for us to say that robbery was not the defendant's intent and that the jury was well within the bounds of reasonable inference in concluding that the expression, as used repeatedly, was a declaration of intent to have sexual intercourse with the victim by force as would be required to constitute a violation of General Statutes § 53a-70.

In *McCray* v. *Abrams,* 750 F.2d 1113 (2d Cir. 1984), reh. denied en banc, 756 F.2d 277 (2d Cir. 1985), the court considered the issue and formulated this test by which a defendant may establish a prima facie case of unconstitutional misuse of peremptory challenges to members of the venire or jury panel: "(1) the group alleged to be excluded is a cognizable group in the community, and (2) there is a substantial likelihood that the challenges leading to this exclusion have been made on the basis of the individual venirepersons' group affiliation rather than because of any indication of a possible inability to decide the case on the basis of the evidence presented." Id., 1131–32. Once this prima facie case has been presented, the burden shifts to the prosecution to overcome the presumption that the action was unconstitutional. Id., 1132.

In the present case, the record before us demonstrates that, although the group which was allegedly excluded is one which is cognizable in the community, the defendant has failed to show a substantial likelihood that the state's peremptory challenge of the black venirepersons was made on the basis of the prospective jurors' affiliation with that group. Indeed, counsel for the defendant has not presented us with a transcript of the voir dire examination of prospective jurors for our review. Nor did counsel raise any objection to the voir dire examination until shortly before the jury was to be sworn. There is no record to support the defendant's bald claim of "systematic" exclusion of black jurors.

In *McCray* v. *Abrams,* supra, the court expressly noted that counsel for the defendant (1) had objected, during voir dire, to the prosecutor's alleged misuse of eleven challenges to exclude blacks from the jury,[3]

---

[3] In another case cited by the defendant, twelve of the thirteen black members of the venire were excluded from the jury. The thirteenth black was seated as an alternate. *Commonwealth* v. *Soares,* 377 Mass. 461, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S. Ct. 170, 62 L. Ed. 2d 110 (1979).

(2) had identified several minority members who were excused without reason, and (3) had identified one minority juror who would reasonably have been expected to sympathize more with the complainant than with the defendant. Id., 1133. Under those circumstances, the court there concluded that the defendant had established his prima facie case. The defendant in the present case, however, has failed to show that there is a substantial likelihood that the state's peremptory challenge of the three black members of the jury panel was based on their race.

We note that the defendant has suggested that we conclude that the state's use of its three peremptory challenges to black veniremen constituted a violation of article first, § 8, of the constitution of Connecticut independent of any violation of the constitution of the United States. We conclude that this case does not present a factual situation or record which requires us to measure the limits of our state constitution on this issue.

There is no error.

In this opinion the other judges concurred.