## STATE OF CONNECTICUT *v.* SYDNEY WYLIE
## (4235)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued December 2, 1986—decision released May 12, 1987

*Elizabeth M. Inkster,* special public defender, for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *Robert O'Brien,* assistant state's attorney, and *Glenn Kaas* and *Cheryl Petrucci,* law student interns, for the appellee (state).

DUPONT, C. J. There are three issues involved in this appeal. The first is whether the trial court erred in denying the defendant's motions to suppress evidence, to suppress a statement of the defendant and to dismiss the information. The second is whether the trial court erred in its charge to the jury on circumstantial evidence. The third is whether the defendant has established a prima facie case demonstrating a violation of his constitutional right to an impartial jury.

The defendant was charged with carrying a pistol without a permit, in violation of General Statutes § 29-35. He was found guilty by a jury, and is appealing from the judgment rendered on the jury's verdict. The facts which follow are relevant to this appeal.

One cold Christmas midnight, in 1983, the defendant entered a twenty-four hour market in a New Haven neighborhood. While he was there, an employee of the store noticed the butt of a pistol protruding from the waistband of his pants. As the defendant was exiting the store, carrying a brown paper bag which contained a bag of potato chips, an officer of the local police department entered the store. The employee of the market informed the officer that the man he had just seen leaving was carrying a gun. The officer immediately left the market, and observed the defendant walking quickly across the street. When the defendant turned and saw the officer looking down the street after him, he began to run. The officer then gave chase in his cruiser.

When the officer drove his cruiser alongside the defendant, the officer drew his own weapon, and began

exiting his cruiser while ordering the defendant to halt. In response, the defendant began emptying the contents of the paper bag, enabling the officer to catch sight of a gun. The officer then had to reenter the cruiser in order to bring the vehicle to a complete stop. The officer reemerged from his cruiser, and held the defendant at gunpoint until an additional officer arrived at the scene. The newly arrived officer then searched the defendant, and discovered seven live bullets in his pants' pocket. Shortly thereafter a pistol was found on the sidewalk some twenty feet from the defendant. At the time he was apprehended, the defendant exclaimed that he thought carrying a gun was "alright as long as it wasn't loaded."

The defendant's first claim is that the trial court erred in denying both his pretrial motions to suppress and his motion to dismiss. The motions to suppress were directed at the statement he made at the time he was detained, the bullets seized from his pants' pocket, and the gun found on the sidewalk. The defendant's claim of error relies upon his establishing that at the time the officer initially began his pursuit, he lacked an articulable suspicion to support the initial detention of the defendant. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Aversa,* 197 Conn. 685, 690, 501 A.2d 370 (1985). The trial court, in denying the motions to suppress, concluded that the officer did have reasonable suspicion to stop the defendant and to determine if he was, in fact, carrying a weapon and, thereafter, to arrest the defendant and search his person and the street; and to admit the statement of the defendant as spontaneously made and not seized in violation of the defendant's *Miranda* rights. *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We find that the initial detention of the defendant was justified, and that when the offi-

cer saw the defendant removing a gun from his bag as he fled, he was justified in expanding the scope of his detention of the defendant.

"It is well established that police may momentarily detain an individual for investigative purposes if the police have 'a "reasonable and articulable" suspicion that [he has] engaged in criminal activity. *Reid* v. *Georgia,* 448 U.S 438, 440, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980); *Terry* v. *Ohio,* [supra].' *State* v. *Carter,* 189 Conn. 611, 617, 458 A.2d 369 (1983). What constitutes a reasonable and articulable suspicion depends on the 'totality of the circumstances.' *United States* v. *Cortez,* 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). 'The test to be applied, however, is an objective one: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry* v. *Ohio,* supra, 22. In justifying the particular intrusion "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio,* supra, 21; see *United States* v. *Brignoni-Ponce,* [422 U.S. 873, 884, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975)]; *State* v. *Watson,* 165 Conn. 577, 585, 345 A.2d 532 (1973).' " *State* v. *Aversa,* supra, 690–91; see *State* v. *Cardinal,* 194 Conn. 114, 117, 478 A.2d 610 (1984); *State* v. *Januszewski,* 182 Conn. 142, 148–49, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). "The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officers' suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances." *State* v. *Watson,* 165 Conn. 577,

585, 345 A.2d 352 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974).

In this case, the police officer was told that the defendant was carrying a gun, either on his person or in the bag he was carrying. The officer then stepped out the front door of the store in order to observe the defendant. When the defendant caught sight of the officer, he stopped walking and broke into a run. "These circumstances certainly constitute 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.' *Terry* v. *Ohio,* supra, 21." *State* v. *Cardinal,* supra, 118; *State* v. *Williamson,* 10 Conn. App. 532, 543, 524 A.2d 655 (1987). While the mere fact that an officer has been informed that a person is carrying a weapon may not of itself constitute grounds to frisk that person, in light of the fact that it is not illegal to carry a weapon with a permit, the defendant's flight and subsequent movements concerning the weapon would make it reasonable for the officer to consider him "dangerous." See *Adams* v. *Williams,* 407 U.S. 143, 153, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) (Marshall, J., dissenting).

The fact that the officer had his own weapon drawn when he ordered the defendant to halt did not transform the investigatory stop into an arrest. "What might be unreasonable when an officer merely suspects that a minor offense has been committed is not unreasonable when, as here, officers have reason to fear that a suspected criminal is armed. The nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the reaction of the suspect to the approach of police are all facts which bear on the issue of reasonableness." *United States* v. *Harley,* 682 F.2d 398, 402 (2d Cir. 1982). A single officer investigating a report of an armed person late at night who has taken flight after becoming aware that

he is under observation, is not acting unreasonably in drawing his own weapon. See *United States* v. *Jones,* 759 F.2d 633 (8th Cir. 1985); *United States* v. *Manbeck,* 744 F.2d 360 (4th Cir. 1984); *United States* v. *Nargi,* 732 F.2d 1102 (2d Cir. 1984). The fact that the defendant at that moment was in flight and suspected only of carrying a weapon, and not of having committed a crime with that weapon other than the possibly felonious possession of it, does not preclude the officer from drawing his own weapon when making such an investigatory stop.

The frisk of the defendant, which yielded the bullets which the defendant seeks to have suppressed, was likewise not unreasonable or conducted incident to an illegal arrest. The second officer, who arrived on the scene virtually simultaneously with the stop, and who frisked the defendant, had reason to believe that the defendant was armed and potentially dangerous. He had heard and responded to the first officer's transmission over the police radio of the fact that he was in pursuit of an armed man. Indeed, at the point when he arrived he was informed by the first officer that he had seen the defendant drawing a gun out of his paper bag, and that the officer did not know where the gun was at that time. At the time the defendant was frisked, the officers had reason to believe he was armed, and, in light of his initial flight and the fact that he had attempted to, or did, draw the weapon when ordered to stop, was dangerous. *Terry* v. *Ohio,* supra, 22. This protective search was not unreasonable under the circumstances, and the motion to suppress the bullets was properly denied by the trial court. See, e.g., *United States* v. *Stevens,* 509 F.2d 683 (8th Cir.), cert. denied, 421 U.S. 989, 95 S. Ct. 1993, 44 L. Ed. 2d 479 (1975); *United States ex rel. Richardson* v. *Rundle,* 461 F.2d 860 (3d Cir. 1972); *People* v. *Myles,* 50 Cal. App. 3d 423, 123 Cl. Rptr. 348 (1975); cf. *Commonwealth* v. *Pegram,* 450

Pa. 590, 301 A.2d 695 (1973). The motion to suppress the gun likewise relies upon defendant's contention that the officers lacked a reasonable suspicion to detain the defendant for investigative purposes. As we have previously explicated, such reasonable suspicion existed, and the motion to suppress the gun was properly denied.

The defendant also sought to suppress his statement that he thought it was permissible to possess an unloaded weapon. It is his claim that he was then in custody, and that without the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the statement must be suppressed. The defendant made the statement contemporaneously with the discovery of the weapon by the police. Even if we accept the contention which was conceded by the state, that the detention of the defendant was transformed into a custodial arrest at the moment the abandoned gun was discovered, we cannot discern any violation of his fifth amendment rights. The defendant was not subjected to any form of interrogation by the officers. In fact, they asked no questions of him at all at that time. The defendant's statement was clearly spontaneous and voluntary. *Colorado* v. *Spring*, 479 U.S. 564, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987); see *State* v. *Stankowski*, 184 Conn. 121, 136, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). It was not made in response to a question or in response to a provocative remark of the police. The discovery of the gun by the police, in the course of their investigation and in the presence of the defendant, comprise actions which are normally attendant to custody, but are not among those condemned as a form of interrogation by subterfuge. See *Rhode Island* v. *Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); *State* v. *Vitale*, 197 Conn. 396, 411, 497 A.2d 956 (1985). The trial court properly denied the defendant's motion to suppress this statement.

The defendant also claims that this motion to dismiss the information should have been granted. Even if his detention and arrest were unlawful, he would not be entitled to a dismissal of the charges against him. See *State* v. *Graham,* 200 Conn. 9, 21, 509 A.2d 493 (1986); *State* v. *Fleming,* 198 Conn. 255, 259, 502 A.2d 886 (1986); *State* v. *Hansen,* 8 Conn. App. 26, 28, 510 A.2d 465, cert. denied, 201 Conn. 806, 515 A.2d 379 (1986).

The defendant's second claim of error is that the charge to the jury on the use of circumstantial evidence and the inferences to be drawn therefrom diluted the standard of proof borne by the state. A plethora of such claims have been recently decided by the appellate courts of this state. See *State* v. *Mullings,* 202 Conn. 1, 519 A.2d 58 (1987); *State* v. *Smith,* 201 Conn. 659, 519 A.2d 26 (1986); *State* v. *Walker,* 9 Conn. App. 373, 519 A.2d 83 (1986), cert. denied, 202 Conn. 805, 520 A.2d 1286 (1987). The court charged the jury in this case that the inferences which could be drawn from the facts already proven were those which were logical and reasonable, thus omitting the allegedly essential phrase "and also proved beyond a reasonable doubt."[1] The defendant claims that this charge, coupled with the alleged necessity for the jury to infer from circumstantial evidence the defendant's lack of a permit to carry the pistol he possessed, make it reasonably possible that the jury was misled. *State* v. *Mullings,* supra, 14.

The state presented two witnesses to the jury to prove that the defendant did not have a permit to carry

---

[1] The court charged the jury, with respect to inferences, as follows: "In passing upon the facts, which is your duty, you should consider all of the evidence in this case bearing upon the issues presented to you, and you should draw such proper inferences from the facts as you may find have been proven already; and infer from those facts, those conclusions which are reasonable and logical.

"If you find the underlying facts to have been proven, it is up to you, and you alone, to determine whether those underlying facts reasonably and logically lead to an inference, or a conclusion of fact."

the gun he possessed. One was the police officer responsible for maintaining records of such permits for the city of New Haven, where the defendant was arrested, the other a state police officer whose duty it is to maintain such records for any statewide permits. Both officers testified that they had searched the pertinent data and had determined that no permit was ever issued to the defendant. The failure of the defendant to testify at trial hardly renders such evidence circumstantial in nature. The fact that no permit was ever issued to the defendant to carry a gun in the city of New Haven, or in the entire state, was the subject of direct evidence. The proof of the element of having a permit was not dependent upon circumstantial evidence. Therefore, the charge will be reviewed as a whole. *State* v. *Farrar*, 7 Conn. App. 149, 155–57, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

The failure of the trial court to utter the talismanic "beyond a reasonable doubt" phraseology after each and every statement of what is to be proved by the state, or of how that proof is to be made, does not necessitate reversal. See *State* v. *Mullings,* supra, 11–14; *State* v. *Smith,* supra, 672–74; *State* v. *Walker,* supra, 376–77; *State* v. *Wright,* 9 Conn. App. 275, 279, 518 A.2d 658 (1986). The statement that inferences should be reasonably and logically drawn is not, in and of itself, erroneous. In fact, such an instruction, it has previously been recognized, is "entirely proper." *State* v. *Wright,* supra, 282; see *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); D. Borden & L. Orland, Connecticut Criminal Jury Instructions § 2.5, pp. 43–44. In this case the instruction did not at any time charge the jury on a standard of proof less than the "beyond a reasonable doubt" requisite. See *State* v. *Wright,* supra, 280–82; cf. *State* v. *Mullings,* supra, 11; *State* v. *Smith,* supra, 673. In fact, with regard to circumstantial evidence, the trial court explicitly stated to the jury that

"[w]hether [an inference] is proven beyond a reasonable doubt is entirely up to you." We find no error in this instruction.

The defendant's final claim of error is that the trial court erred in denying his motion to dismiss the jury panel. The motion was based upon the contention of the defendant that the state's attorney had exercised his peremptory challenges in a racially prejudicial manner.

The following facts are pertinent to this issue. During the voir dire of the venire pool, a total of twenty-six persons were the subject of the voir dire. A jury of six, and two alternate jurors, was chosen from among these twenty-six persons. The trial court excused six persons for cause. Of the remaining twenty venire members, four were black. The first black venire member voir dired was peremptorily challenged by the defendant and not the state.[2] At the time, the defendant had not yet objected to the state's alleged exercise of peremptory challenges against blacks. During the selection of the other members of the jury, the state peremptorily challenged the only other three blacks. At the time the defendant raised his objection to the allegedly racially prejudiced use of peremptory challenges by the state, the jury selection was complete except for the second alternate juror. The defendant waited until that time to make his claim of systematic exclusion on the basis of race. The defendant claimed a violation of his constitutional rights under the sixth and fourteenth amendments to the Constitution of the United States, as well as under the state constitution. The trial court, in denying the defendant's motion as

_____

[2] During the colloquy on the defendant's objection to the state's exercise of its peremptory challenges against blacks, the state claimed to have already accepted one black man who was peremptorily excused by the defendant. That venire member was recalled by the court for further questioning, at which time it was determined that he was, in fact, black.

to all claimed constitutional grounds, relied upon the constitutional interpretations proffered in *People* v. *Williams,* 97 Ill. 2d 252, 454 N.E.2d 220 (1983) which in turn relied essentially upon the holding of *Swain* v. *Alabama,* 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965). At that time, *Swain* was the controlling decision under the fourteenth amendment.

In reviewing the defendant's claim of error, we must apply the standards enunciated in *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). This decision effectively overruled the *Swain* holding on fourteenth amendment grounds, and is dispositive of this appeal. We likewise limit our review under the federal constitution to the fourteenth amendment claim.[3] The parties in *Batson* v. *Kentucky,* supra, presented their claims of unconstitutional peremptory challenges to the court on sixth amendment grounds, not directly challenging the *Swain* holding, which was decided under the fourteenth amendment. The *Batson* court, however, decided the case under the fourteenth amendment. We restrict our review to the fourteenth amendment. *Batson* has been held to apply retroactively to pending appeals in *Griffith* v. *Kentucky,* 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987).

In order for the defendant to bear his burden of establishing a prima facie case of a violation of the equal protection clause of the fourteenth amendment of the United States constitution, he must demonstrate pur-

---

[3] The defendant's brief was written before *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d (1986), was decided. The argument in his brief relies on article first, § 8, of the Connecticut constitution. The defendant's reply brief was written after *Batson* was decided, and relies, in addition, on the fourteenth amendment to the United States constitution. In view of the *Batson* holding, we do not undertake a separate analysis of the defendant's state constitutional claim. The defendant has not advanced any argument under the state constitution which is distinguishable from his claim under the federal constitution. See *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 485 A.2d 273 (1985).

poseful discrimination by the state. The United States Supreme Court has enunciated the factors to be considered in making a determination of whether a prima facie case has been established. "To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda* v. *Partida,* [430 U.S. 482, 494, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire, members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery* v. *Georgia,* [345 U.S. 559, 562, 73 S. Ct. 891, 97 L. Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination." *Batson* v. *Kentucky,* supra, 1723.

In this case the defendant, a black man, has preserved a record which demonstrates that the state exercised its peremptory challenges to remove three out of the four black persons from the venire. Cf. *State* v. *Upshaw,* 7 Conn. App. 257, 508 A.2d 791, cert. denied, 201 Conn. 803, 513 A.2d 698 (1986). The second prong of *Batson,* that peremptory challenges allow those who wish to discriminate, to discriminate, is a given in any case involving the claim of purposeful discrimination by the state. The question here is whether the inference that such peremptory challenges may have been used for racially discriminatory purposes is applicable to the facts of this case. The trial court, in ruling on the defendant's motion, made several findings of fact about

the venire members challenged which were relied upon in denying the motion. As to one of those challenged, the court found that that person was familiar with the store at which the chain of events leading to the defendant's arrest started. That venire member stated that she had stopped at the store perhaps twice in order to purchase a cup of coffee.

As to another black venire member challenged, the court found that he had some familiarity with weapons. The transcript reveals that other, nonblack venire members who went unchallenged by the state demonstrated a far greater familiarity with guns, and in particular, with pistols. The trial court also specifically found that this venire person had previously been charged with the commission of a felony, but there was no evidence in the voir dire, or on the record of such an occurrence. The venireman himself, however, stated that he had been charged with breach of the peace. The trial court made no factual findings of any possible motivation for the exclusion of the third black venire person. The transcript contains no other information relevant either to the neutral or to the racially motivated exercise of peremptory challenges by the state.

The findings of fact of the trial court are to be given weight because of its experience in supervising the voir dire. *Batson* v. *Kentucky,* supra, 1723. It is in a better position than an appellate court to decide "if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." See *Batson* v. *Kentucky,* supra, 1723.

The states are forbidden "to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race,

would be meaningless" if jurors were excluded "on the basis of such assumptions, which arise solely from the jurors' race." Id. The trial court has the duty of determining if the defendant has established a prima facie case of purposeful discrimination. Id., 1724 n.21. *Batson* does not require a per se reversal of a defendant's conviction when the state has exercised its peremptory challenges to remove all black persons on the venire from the jury, but does require the state to give an explanation for such exercise. Id., 1725. If the defendant can establish "a prima facie case of racial discrimination violative of the Fourteenth Amendment, based on the prosecution's use of peremptory challenges to strike members of the defendant's race from the jury venire" . . . "the burden shifts to the prosecution to come forward with a neutral explanation for these challenges." *Griffith* v. *Kentucky,* supra, 710.

The defendant has not shown that the state's exercise of its peremptory challenges raises the inference that the challenges were used for racially discriminatory purpose. The state exercised three challenges against black jurors, and did not exercise a challenge to a fourth black juror. Two black jurors were challenged for articulable and racially neutral reasons. One of the two jurors was excused because of his knowledge of weapons and his prior arrest for a misdemeanor. The other was excused because of her knowledge of the general area, including the store from which the defendant had exited. Such reasons are valid bases for the exercise of peremptory challenges and do not indicate a purposeful discrimination by the state because of race.

Given the rule that a trial court's findings of fact are to be accorded weight, and the fact that only one of the challenged veniremen was excused for no neutrally explicable reason, we do not find that the peremptory

challenges exercised by the state were exercised for racially discriminatory purposes.

There is no error.

In this opinion the other judges concurred.