STATE OF CONNECTICUT *v.* BILLY TAPPIN
(7075)

BORDEN, SPALLONE and LAVERY, Js.

Argued September 14—decision released November 21, 1989

*Kathleen S. Mass,* with whom, on the brief, was *Daniel A. Lyons, Jr.,* for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Michael Pepper,* assistant state's

attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, after a jury trial, of possession of a narcotic substance in violation of General Statutes § 21a-279 (a). The defendant claims that the trial court erred (1) in failing to compel the state to articulate a nondiscriminatory reason for its peremptory challenge of a black venireperson, and (2) in omitting from its rereading to the jury of its charge on reasonable doubt several crucial instructions, thereby diluting the state's burden of proof. We find no error.

I

The defendant first claims that the trial court's failure to compel the state to articulate a nondiscriminatory reason for its peremptory challenge of a black venireperson violated his state and federal constitutional rights to equal protection and an impartial jury. U.S. Const., amend. VI, XIV; Conn. Const. art. I, §§ 8, 20. We disagree.

Of the thirty-three venirepersons voir dired, six jurors and two alternates were chosen, and thirteen venirepersons were excused by the court, eight by the defendant and four by the state. The state asked the same questions of each venireperson. After eliciting background information, the prosecutor asked each venireperson whether he or she believed society suffers from a drug problem, whether he or she would be influenced by the quantity rather than the quality of the testimony, and whether he or she would be able to be fair to both sides, follow the court's instructions and vote for a verdict of guilty or not guilty according to the evidence.

From our review of the transcripts it appears that each of the first nine panelists responded to these and

similar questions in a straightforward and unequivocal manner.[1] The tenth venireperson[2] was challenged by the state. Immediately thereafter, the following colloquy took place:

"The Court: First challenge for the state?

"[State's Attorney]: Yes, Your Honor.

"The Court: The court will take a short recess.

---

[1] The transcript of the voir dire of the second venire panelist, for instance, sets forth in pertinent part:

"Q. . . . Let me ask you this: Do you believe that there is a drug problem in society today?

"A. Certainly. . . .

"Q. . . . [A]ssuming you are chosen as a juror and you listen to all the evidence, at the end of the trial the judge is going to instruct you as to what the law is. Do you think you would do your best to follow the judge's instructions as to what the law requires and what defenses is [sic]?

"A. Yes.

"Q. I think the judge may also tell you in his instructions that it's not the quantity of witnesses but the quality. Do you think you could be fair to one side if one side had fewer witnesses than the other?

"A. Yes, I do. . . .

"Q. If, after hearing all the evidence in the trial, you were convinced that the state had proven guilty beyond a reasonable doubt would you be able to render a guilty verdict?

"A. Yes.

"Q. Okay. And likewise, if you were not convinced that the state had met its burden, you wouldn't have any problem finding the defendant not guilty?

"A. No, I wouldn't."

[2] During the state's voir dire of the tenth venireperson the prosecutor asked the following questions:

"Q. . . . [T]he defendant is charged with possession of narcotics. Would you say that there is a problem with drugs in our society today?

"A. It appears to be.

"Q. Anything just about the nature of those charges that make it difficult for you to sit on a jury?

"A. Like what? (Inaudible)

"Q. You're going to have to speak up a bit.

"A. What makes it difficult?

"Q. Maybe the seriousness of the offense or maybe your feelings toward drugs. Let me ask you this. Do you think the state should vigorously prosecute drug offenses?

"[Defense Counsel]: Your Honor, I don't know how many panelists we've had for voir dire, it's quite a few. I've lost count.

"The Court: That's number ten.

"[Defense Counsel]: Number ten, and the state has not exercised any challenges thus far and [this venireperson] was the first black panelist to be subject

---

"A. Well, it depends on vigorous. I mean, how active would you mean? That he should be an addict, or what?

"Q. Well, do you think the state should look the other way?

"A. Oh, no. No.

"Q. No, The state should actively pursue—

"A. Yeah.

"Q. —drug investigations?

"A. Oh, yeah.

"Q. . . . [I]f you were chosen to sit on the jury, at the end of the case the judge would instruct you as to what the law is, do you think you could accurately follow what the judge told you as to what the law is in this case?

"A. Well, if he point out, you know, everything there is to point out I could probably follow it.

"Q. But you would listen to the judge and do your best to follow the judge's instructions?

"A. (No audible response.)

"Q. Okay. . . . [I]f you sat on the jury and you heard all the evidence and you were convinced that the defendant was guilty, the state had proven guilty beyond a reasonable doubt, could you vote for a guilty verdict?

"A. Could I?

"Q. Yes.

"A. Well, it all depends on how—what the—actually know what the circumstances are.

"Q. Well, not to get into the specifics of this case, but I'm just saying hypothetically, if you were convinced that the defendant was guilty, that the state had proven their case against the defendant, could you—

"A. What would I do.

"Q. I'm sorry?

"A. You're asking me how would I do?

"Q. No, I'm just saying if you were convinced that the defendant was guilty would you be able to render a guilty verdict?

"A. Oh, of course.

"Q. Yes?

"A. Yeah.

"Q. Okay. Likewise if you were convinced that the defendant was innocent you'd vote not guilty?

to a voir dire and it was the first man against which the state has exercised the challenge. Now, when [the state's attorney] was engaging in a voir dire with [this venireperson], I took very good notes about the responses that [he] gave to [the state's attorney]. The responses by and large were no different than most of the responses given to [the state's attorney] by all of the white panelists and in accordance with the most

"A. Obviously, yeah. . . .

"Q. All right. Do you think you could be fair to the defendant and to the state?

"A. No, I hope to.

"Q. Okay. Would you listen to both sides?

"A. Yeah, absolutely.

"Q. Yes. And you think you'd be fair to both sides?

"A. Yeah. (Mumbling.)

"Q. Yes. No. You're not sure?

"A. Well, at this time I couldn't, you know, put my yes or no on anything.

"Q. Well, would you leave your mind open to listen to both sides?

"A. Oh, open mind, yeah.

"Q. Okay. Is there some reason way down the road that you don't think you could be fair to both sides?

"A. It's possible.

"Q. Okay. Would you listen to the witnesses on both sides and judge their credibility to the best of your ability?

"A. If I have to, yeah. I could use credibility.

"Q. Okay. There might be a certain number of police officers who testify in a case. Do you think you would judge their credibility as you would any other person?

"A. Well, I (mumbling).

"Q. All right. Thank you very much."

The following passages are quoted from the transcript of the defendant's voir dire of the tenth venireperson:

"Q. Okay. Do you have any problem with the fact that the greater burden is placed upon the state in a criminal case than is placed upon the ordinary person who is suing someone else? Do you have any political differences with that at all?

"A. I haven't found any yet.

"Q. Okay. Do you have any opinions one way or the other. For example, are you the kind of person who believes that people ought to be convicted by a standard less than evidence or proof by a reasonable doubt?

"A. That's true.

"Q. What I'm saying is do you have any opinions one way or the other.

recent Supreme Court opinion on this issue I move this court for a hearing that [the state's attorney] be put under oath and made to—

"The Court: Motion denied. Recess."

Although it has been well settled for over a century that the systematic exclusion of otherwise qualified citizens from jury service on account of race violates the equal protection clause of the fourteenth amendment; *Strauder* v. *West Virginia,* 100 U.S. 303, 25 L. Ed. 664 (1880); until recently, criminal defendants were unable to challenge effectively the state's use of peremptory challenges for discriminatory purposes in specific cases. See *Swain* v. *Alabama,* 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965) (equal protection violation shown only where discriminatory use of peremptory challenges is evident in case after case, whatever the circumstance). In 1986, the Supreme Court, in *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), overruled *Swain* v. *Alabama,* supra, and held that the discriminatory use of a peremptory challenge in a single case violates the equal protection clause.

Under *Batson* v. *Kentucky,* supra, the defendant must first make a prima facie showing that the state exer-

---

"A. No.

"Q. Okay. Let me rephrase the question. Do you believe that people ought to be able to be convicted of crimes on proof less than beyond a reasonable doubt, less than the standard that we have now?

"A. I don't think so. . . .

"Q. Would you follow the judge's instructions even if personally you disagree with them?

"A. That might be too difficult. . . .

"Q. Okay. What about you . . . . Do you consider yourself to have common sense?

"A. Well, part of the time.

"Q. Do you consider yourself to be—

"A. Say, 50 percent of the time.

"Q. Okay. Do you consider yourself to be a man who is a good judge of character?

"A. Fair."

cised a peremptory challenge with a racially discriminatory purpose. Id., 96. This showing must include evidence that the defendant "is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [peremptory challenges] to exclude the venireman from the petit jury on account of their race." (Citations omitted.) Id. In making his prima facie showing, the defendant may "rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " Id.

If the defendant successfully makes this prima facie showing, the burden shifts to the state to articulate a neutral explanation for excusing members of the defendant's racial group. Id.; *State* v. *Wylie,* 10 Conn. App. 683, 696, 525 A.2d 528, cert. denied, 204 Conn. 807, 528 A.2d 1154 (1987). The trial court must then determine whether the defendant has carried the overall burden of showing purposeful discrimination.

In *State* v. *Holloway,* 209 Conn. 636, 553 A.2d 166 (1989), a case published after the defendant's trial, our Supreme Court, in an exercise of its inherent supervisory authority, modified the *Batson* procedure, ruling that "in all future cases in which the defendant asserts a *Batson* claim, we deem it appropriate for the state to provide the court with a prima facie case response consistent with the explanatory mandate of *Batson.*" Id., 646. Because the court expressly limited the applicability of this rule to future cases, the *Batson* procedure, as outlined above, controls this case.

In this case, the state peremptorily challenged the first black venireperson. The defendant objected, gave the factual basis for his objection, and moved to place the state's attorney under oath to proffer a neutral reason for the challenge. The trial court summarily denied the motion and took a short recess. Under *Batson,* the trial court should deny such a motion only after determining that the defendant had failed to make a prima facie showing of discriminatory abuse of the challenge. *State* v. *Wylie,* supra. Accordingly, we must determine whether the trial court could reasonably have reached such a conclusion.

Our task is complicated by the very flaw in the record that the *Holloway* rule will eradicate from future cases, namely, the absence of any neutral explanation given by the state for the challenge. See *State* v. *Holloway,* supra, 645–46. Nevertheless, we can review the record to determine whether the defendant made the requisite prima facie showing. See, e.g., *State* v. *Martin,* 2 Conn. App. 605, 614, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985) (appellate courts may look to the evidence produced in support of a ruling when a trial court rules on motion to suppress without detailing facts supporting its decision).

The first *Batson* factor is satisfied. The record reveals that the defendant is black and that the prosecutor exercised a peremptory challenge to remove the tenth venireperson, a black man, from the venire. The only other "relevant circumstance"; see *Batson* v. *Kentucky,* supra, 96–97; alleged by the defendant was that the venireperson's responses to the voir dire were "no different than most of the responses given" by other, white venire panelists to the same questions. We disagree with this assertion.

Generally speaking, the venireperson in question mumbled or spoke softly when answering questions on the stand. It is evident from the transcript of his testimony; see footnote 2, supra; that he was confused by hypothetical questions, was equivocal in his opinion of whether society suffers from a drug problem and was unsure of his ability to follow the court's instructions and to be fair to both sides. Furthermore, he testified that he considered himself to exercise common sense only about "50 percent of the time."

We also note that both the state and the defendant asked basically the same questions of this venireperson as they did of other venire panelists, and that the state's questioning of him does not appear from the transcript to have been perfunctory. Of the three remaining venire panelists excused by the state, it appears from the transcript that one was excused for his equivocal position on the existence of a societal drug problem, another due to his negative view of police officers, and the third because she had been a victim of crime. Thus, no pattern of racial discrimination emerges from the state's exercise of the challenge. *State* v. *Gonzalez,* 206 Conn. 391, 399, 538 A.2d 210 (1988).

We conclude that the record before us does not support a reasonable inference that the state exercised the challenge for a racially discriminatory purpose. Because the defendant did not make the required prima facie showing, the trial court did not err in refusing to compel the state to explain the challenge at issue in this case.

## II

The defendant next claims that the trial court erred in its rereading to the jury of its charge on reasonable doubt. The following facts are pertinent to our analysis of this issue.

The court charged the jury on Friday, February 19. The court explained what is not a reasonable doubt, then instructed the jury on what constitutes a reasonable doubt.[3] Thereafter, the court explained that the state bears the burden of proving the defendant guilty beyond a reasonable doubt, that the defendant must be presumed to be innocent unless there is proof beyond a reasonable doubt and that the state must prove all elements of the crime charged.[4]

Later that afternoon, after it had begun its deliberations, the jury requested that the court "reread that statement about reasonable doubt." The court replied that it would do so the following Monday morning.

The court's rereading included the instruction on what constitutes a reasonable doubt; see footnote 3, infra; but omitted the paragraphs concerning the presumption of innocence, the state's burden of proving every element of the crime charged, and the jury's duty to acquit if it found the evidence supported a hypothesis consistent with innocence. See footnote 4, infra. The defendant took exception to the recharge, complaining that it was "overly beneficial to the state" in comparison to the charge given on Friday. He did not, however, specifically apprise the court of the exact passages that were omitted.

---

[3] The court's instruction on reasonable doubt was as follows: "It is a doubt that is based upon reason and which grows out of the evidence or lack of evidence which was presented. A reasonable doubt is a doubt that is reasonable and honestly entertained after a thorough evaluation and careful examination of all of the evidence which you have heard."

[4] The court's instructions on these principles were as follows: "The burden, then, is on the state to prove the accused guilty of the crime of which he is charged. He, the accused, is not—does not have to prove his innocence. The law presumes the defendant to be innocent of the crime. Thus the defendant begins the trial with a clean slate and with no evidence against him and the law permits nothing [except] legal evidence presented before the jury to be considered in support of any charge against the accused.

"So the presumption of innocence alone is sufficient to acquit a defendant unless the jury is satisfied beyond a reasonable doubt of the defend-

The state argues that because the defendant failed at trial to advise the court of the precise nature of his objection, on appeal this court should not review a more carefully distilled version of his objection. Under Practice Book § 4185 we are not bound to consider a claim unless it was distinctly raised at trial, and was " ' "so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1903).' *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986)." *State* v. *Lonergan,* 16 Conn. App. 358, 362, 548 A.2d 718 (1988), cert. granted on other grounds, 210 Conn. 812, 556 A.2d 611 (1989). The defendant's exception and legal argument do not meet this test. From the transcript, it is impossible to discern any discrete legal theory for the defendant's exception, other than that the recharge was "overly beneficial" to the state. From this argument, the trial court could not have been expected to deduce that the defendant was really complaining that the recharge unconstitutionally diluted the state's burden of proof, which is the defendant's theory on appeal.

Neither is this claim entitled to review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Although the defendant's claim wears the mantle of the consti-

---

ant's guilt after a careful and impartial consideration of all the evidence. This means that the state must prove every element necessary to constitute the crime charged . . . .

"As I indicated, it is not enough for the state to prove all or some of the elements—they must prove each one of the elements because if proof of even one of the elements is lacking, you must find the accused not guilty. The State, in other words, can establish the burden and rest on it only by proof of every element beyond a reasonable doubt. . . . As I said, proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis of guilt [sic]. If two conclusions can be drawn, reasonably drawn from the evidence, one of innocence and one of guilt, you must adopt the one of innocence unless you are convinced beyond a reasonable doubt, convinced of guilt beyond a reasonable doubt, then you must find Mr. Tappin not guilty."

tution, the claim itself is not truly of constitutional proportions. *State* v. *Huff,* 10 Conn. App. 330, 334, 523 A.2d 906 (1986), cert. denied, 203 Conn. 809, 525 A.2d 525 (1987); *State* v. *DeMayo,* 18 Conn. App. 297, 302, 557 A.2d 571, cert. denied, 212 Conn. 807, 563 A.2d 1355 (1989).

The jury had been fully instructed on the state's burden of proving each element, on the presumption of the defendant's innocence, and on what constitutes a reasonable doubt, conceptually distinct but related subtopics of the state's overall burden of proof. The defendant has not challenged the court's original charge. The jury later asked for reinstruction on reasonable doubt, which the court provided. We fail to see how the jury could have considered the court's limited reinstruction on reasonable doubt as a reinstruction on the state's overall burden of proof, or as a substitute for the earlier instruction. Viewing the charge as a whole; see *State* v. *Butler,* 207 Conn. 619, 633, 543 A.2d 270 (1988); we conclude from our limited review of the record that the defendant's challenge to the trial court's rereading of its instructions on reasonable doubt without reiterating its entire general charge on the state's burden of proof is not a claim of constitutional proportion. "The defendant has attached a constitutional label to what is analytically, at its core, a nonconstitutional claim. . . . We therefore decline to review this claim further." (Citation omitted.) *State* v. *Huff,* supra, 335.

There is no error.

In this opinion the other judges concurred.