STATE OF CONNECTICUT *v.* ROBERT LEE WALKER
(4069)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued November 5—decision released December 23, 1986

*Barbara Goren,* special public defender, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark,* deputy assistant state's attorney, and *Andrew Sherriff,* former assistant state's attorney, for the appellee (state).

DUPONT, C. J. There are two issues involved in this appeal. The first issue is whether the trial court erred in its instructions to the jury on circumstantial evidence and inferences to be drawn therefrom. The second issue is whether the trial court erred in its instruction to the jury on proof of the intent of the defendant.

The defendant was charged with the commission of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4). The jury found the defendant guilty as charged, and the defendant appeals from the judgment rendered on the jury's verdict. We find no error.

The charge against the defendant arose out of a bank robbery. During the course of the robbery, sixteen photographs were taken by the bank's surveillance cameras. These photographs were admitted into evidence. The state also presented the testimony of five persons who were in the bank at the time of the robbery, three persons on the street who were witnesses to the flight of the robber, and the testimony of one witness about inculpatory statements made by the defendant while he was incarcerated.

The witnesses who were in the bank at the time of the robbery testified that the man who robbed the bank was either a light colored black man or a deeply tanned white man, with a mustache. They described the clothing he wore as a blue jogging suit with its hood over his head, and a turtleneck pulled up over the lower part of his face. They testified that he wore mirrored sun-

glasses, and carried a white plastic bag. Testimony from one of the witnesses indicated that after he left the bank, the perpetrator ran toward the back of the building. Another witness who worked in a building behind the bank testified that on the day of the robbery an olive skinned man in a blue jogging suit who carried something white ran by his window and climbed over a fence bordering a vacant lot. This witness identified a photograph of the defendant for the police as looking very similar to the man he had seen on the day of the robbery.

Two other witnesses, one of whom knew the defendant by his nickname, were walking down the street which ran in front of the vacant lot into which the previous witness saw the man in the blue jogging suit climb. The witness who knew the defendant testified that he saw him come over the fence, and that he greeted the defendant as he ran by. Shortly thereafter that witness gave the police a description of and the nickname of the defendant. The witness then identified the defendant from a police photo array and from the bank surveillance photographs. The witness also made an in-court identification of the defendant as the person who came over the fence and ran by the witness. The second witness also saw a man in a sweat jacket run by, identified the defendant as that man from a police photo array, identified a bank photograph as similar to the man she saw, and made an in-court identification of the defendant.

After the defendant was arrested for the robbery and while he was being held for trial, a witness who was incarcerated with him testified that the defendant said that he could not be identified as the perpetrator because he had been "completely covered," including mirrored sunglasses, except for his hands, so that he would be mistaken for a white male.

The defendant's first claim is that the trial court erred in its charge to the jury on the state's proof of the identity of the individual who was seen by all of the various witnesses to incidents on the afternoon of the robbery. In that portion of the instructions which the defendant isolates in his claim of error, the court charged the jury that when the necessary predicate facts had been found beyond a reasonable doubt to exist, then the existence of those facts could lead it to make an inference, if the inferred fact was logical and reasonable, that it was more probable than not that the fact to be inferred was true. Both circumstantial and direct evidence was relied upon by the state to establish the identity of the defendant as the perpetrator who had fled the bank and was seen escaping from the scene of the robbery.

The recent line of decisions on review of such instructions reveals that the salient factor in a determination of whether the instruction was erroneous is the issue upon which the instruction bears most significantly. *State* v. *Whelan,* 200 Conn. 743, 757 n.12, 513 A.2d 86, cert. denied, 479 U.S.     , 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 156, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986). When the error claimed relates to the state's proof of identity, " 'the trial court's instructions may *be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence.' [State* v. *Farrar,* supra, 155–56]." *State* v. *Whelan,* supra, 757. The determination which we must make is whether the challenged instruction "unconstitutionally diluted the state's burden of proving the essential elements of the crime beyond a reasonable doubt." Id., 755.

In this case the instruction was given during that portion of the charge generally explaining the use of circumstantial evidence in drawing inferences. The court did not repeat this instruction in its instructions on the

proof of the essential elements of the crime charged, but properly instructed the jury that each essential element, including identity, had to be proved by the state beyond a reasonable doubt. A review of the charge as a whole leads us to the conclusion that it is not reasonably possible that the jury was misled as to the state's burden of proof. *State* v. *Farrar,* supra, 156.

The defendant's second claim of error is that the instructions of the court erroneously equated knowledge with intent. While these instructions were not excepted to at trial, this claim raises a question of fundamental constitutional dimension, with a record sufficient for review. *State* v. *Pierson,* 201 Conn. 211, 214–15, 514 A.2d 724 (1986); *State* v. *Lopez,* 5 Conn. App. 599, 603, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986).

Since the record does not reveal that the defendant requested the court to charge the jury on the statutory definition of intent; § 53a-3 (11); and since the defendant did not take exception to the charge at trial, in order to warrant reversal on appeal "the error must consist of a failure to submit to the jury the essential ingredients of the offense on which the conviction rests; *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945) . . . ." *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). "In cases involving claimed error in the judge's charge to the jury, the ultimate issue is whether it was reasonably possible that the jury was misled." *State* v. *Lopez,* supra, 603.

In this case, the defendant claims that the court's failure to define "intent" amounts to a failure of the court to instruct the jury on an essential element of the crime charged. General Statutes §§ 53a-119, 53a-133 and 53a-134. The defendant relies on the court's use of the word "knowledge" contemporaneously with the words "purpose" and "intent" to bolster his claim. Noting

that in the instant instructions the court never drew a distinction between "knowledge" and "intent," the defendant asserts that it is reasonably possible that the jury was misled on this element. Cf. *State* v. *Lopez,* supra, 605.

The court's use of "purpose, intention, or knowledge" contemporaneously in its charge was in the nature of prefatory remarks on the inference of intent. Thereafter, during its instructions on finding intent, the court did not use the terms contemporaneously, but rather utilized only the term "intent" as that state of mind which had to be proved beyond a reasonable doubt. The defendant did not claim at trial, nor does he on appeal, that he lacked the requisite intent. His defense was that he was not the perpetrator of the crime. *State* v. *Pierson,* supra, 217. While there is no presumption that the defendant had the requisite intent, the failure to charge the jury by using the statutory definition of intent is not necessarily erroneous.

As the defendant argues, it is preferable for a court, when charging on intent, to read the statutory definition to the jury. *State* v. *Mason,* 186 Conn. 574, 585–87, 442 A.2d 1335 (1982). The failure of the court, however, to do so is not an error which mandates reversal. The defendant has not shown that the word "intentionally," as used in these statutes, has "anything other than its ordinary meaning." *State* v. *Maresca,* 173 Conn. 450, 460–61, 377 A.2d 1330 (1977). The omission of the statutory definition in this case was not erroneous. "The plain and ordinary meaning of the word 'intentionally' is so obvious that it is not error for the trial court to refuse to instruct the jury on its statutory definition. *State* v. *Maresca,* [supra, 460–61]." *State* v. *Lopez,* supra, 605. "[W]hen a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute

error." *State* v. *Kurvin,* supra, 562, *State* v. *Maresca,* supra, 460–61.

There is no error.

In this opinion the other judges concurred.