STATE OF CONNECTICUT *v.* PAUL ACKLIN
(3599)

BORDEN, DALY and BIELUCH, Js.

Submitted on briefs October 14, 1986—decision released February 17, 1987

*Paul Acklin,* pro se, the appellant (defendant), filed a brief.

*Robert J. Devlin, Jr.,* assistant state's attorney, *Arnold Markle,* state's attorney, and *Daniel J. Lyons, Jr.,* former assistant state's attorney, filed a brief for the appellee (state).

BIELUCH, J. The defendant appeals from the judgment of his conviction rendered upon the jury's verdict of guilty on the charges of robbery in the second degree, a violation of General Statutes § 53a-135 (a) (1), burglary in the second degree, a violation of General Statutes § 53a-102, and unlawful restraint in the second degree, a violation of General Statutes § 53a-96. He claims that the trial court (1) violated his right to be tried before an impartial jury by failing to require the state to rebut the defendant's prima facie case of prosecutorial misuse of peremptory challenges, (2) violated his constitutional right to a fair trial by prejudicially interfering with the presentation of his defense, and (3) erred in its instructions to the jury on the element of intent requisite for a conviction of burglary in the second degree, thereby impermissibly shifting the burden of proof to the defendant.

The following facts relevant to the defendant's first claim are not disputed. The defendant pleaded not guilty to the charges alleged in a substitute information and elected to be tried by a jury. During the voir dire of the veniremen, the defendant's counsel expressed his concern that the prosecutor's use of peremptory chal-

lenges was motivated by racial bias, thereby infringing upon the defendant's right to be tried before an impartial jury. The defendant's counsel did not request a hearing on the issue or otherwise ask the court to take any particular action relative to this concern.[1] The prosecutor "strenuously object[ed] for the record." The voir dire then continued and a jury of six persons was selected. While the record does not indicate the racial composition of the jury, the state in its brief claims that "prior to the use of any peremptory challenges and prior to any comments by defense counsel, a black venireperson was selected to sit on the jury." This is confirmed by the record.[2]

The defendant claims that the trial court erred by failing to require the state to rebut the defendant's "prima facie case of prosecutorial misuse of peremptory challenges." The defendant seeks review of this claim under the exceptional circumstances of *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), acknowl-

---

[1] During voir dire, the following colloquy took place: "Mr. Lewis [Defense counsel]: I feel, based on the excuses of the last two people, there seems to be a racial bias entering into the selection of witnesses.

"The Court: Excuse me?

"Mr. Lewis: I feel, based on the excusal of the last two witnesses, and I understand that's Mr. Lyons [the assistant state's attorney] prerogative, I understand that, your Honor, but I feel there is beginning to show a definite racial prejudice, bias. We have one black selected so far and it looks like Mr. Lyons is beginning to look for the entire remaining members to be entirely white.

"The Court: That's his prerogative.

"Mr. Lewis: I am not quarrelling.

"The Court: Well, what are you saying?

"Mr. Lewis: I feel that based on a case now coming out in federal jury and things of that nature where there is extreme racial bias a man cannot get a fair trial, that's what I am saying.

"The Court: All right. I will note your comments.

"Mr. Lewis: Thank you, your Honor.

"Mr. Lyons: Can I just strenuously object for the record and have that noted, your Honor."

[2] See footnote 1, supra.

edging that this claim was " 'neither pressed nor passed upon by the court [below] . . . .' " Id., 69. While the defendant's claim implicates a fundamental constitutional right, there is nothing in the record which indicates the complete racial makeup of the jury. The defendant's failure to request a hearing on the issue of alleged prosecutorial misuse of peremptory challenges, or otherwise to press this claim before or upon the completion of the process of jury selection, has rendered this court unable to review his claim. There is no record establishing the claimed prima facie case of prosecutorial misuse of peremptory challenges to support our review of that claim. *State* v. *Upshaw,* 7 Conn. App. 257, 264–65, 508 A.2d 791 (1986); see also *State* v. *McClain,* 171 Conn. 293, 294–95, 370 A.2d 928 (1976); *State* v. *Grant,* 8 Conn. App. 158, 160–61, 511 A.2d 369 (1986). We, therefore, decline to review this claim.

The defendant's second claim alleges that the trial court violated his constitutional right to a fair trial by prejudicially interfering with the presentation of his defense. The facts relevant to this claim are as follows: During the presentation of the state's case, Detective Kenneth Zercie, a member of the New Haven police department, was qualified as a fingerprint expert. After testifying to the standards used by the New Haven police department for identification by fingerprints, the prosecutor asked Zercie to testify about the standards utilized by the Federal Bureau of Investigation (FBI). The defendant objected on the ground that the witness was not competent to testify to the FBI standards without collaboration. Before overruling this objection, the court remarked as follows: "I am sure he has talked to people. On that basis, and I am not sure he is acquainted with it, but New Haven is supposed to be the premier exponent of fingerprints. You will concede

that?" The defendant's counsel replied, "I will concede that point, but I still don't think he can answer the question as to what the FBI or other areas use."

The defendant claims before us that the court's " 'high-lighted statements' exceptionalizing [sic] the 'New Haven Police Department's Identification Unit' [as the] 'premier exponent of fingerprints,' " unfairly prejudiced the defendant's case. He again asks that we review this claim under *State* v. *Evans,* supra, alleging that the trial court's statements interfered with his right to a fair trial.

In order to establish the right to review under *State* v. *Evans,* supra, a party must not only allege that he was deprived of a fundamental constitutional right, but he must also provide this court with a record which demonstrates support for his claim. *State* v. *Evans,* supra; see *State* v. *Ghere,* 201 Conn. 289, 301 n.9, 513 A.2d 1226 (1986); *State* v. *Marino,* 190 Conn. 639, 655, 462 A.2d 1021 (1983); *State* v. *Wright,* 8 Conn. App. 399, 406, 513 A.2d 176 (1986); *State* v. *Cosby,* 6 Conn. App. 164, 172, 504 A.2d 1071 (1986). Whether a record will be deemed supportive of a claim for an *Evans* review requires the exercise of principled appellate discretion. Such discretion must necessarily be exercised on a case-by-case basis.

In the present case, the record falls far short of demonstrating support for the defendant's claim of a violation of his constitutional right to a fair trial. On its surface, the allegedly improper statement could not rise to the level of a deprivation of his right to a fair trial. The defendant's counsel conceded on the record that the court's statement in issue was accurate. The defendant, however, did not utilize the opportunity to cross-examine the expert witness and thereby erase any alleged prejudice of which he now complains. Since the record does not demonstrate support for the defend-

ant's claim of a deprivation of a fundamental constitutional right, we decline to afford him an *Evans* review.

The defendant's third claim is that the trial court's instructions to the jury on the element of intent necessary to prove burglary in the second degree impermissibly shifted the burden of proof to the defendant by its "failure to instruct the jury that 'inferred facts' as well as 'basic facts' must be proved beyond a reasonable doubt."

The trial court's charge on the element of intent as related to the second count alleging burglary in the second degree was as follows: "Burglary in any degree is an intent crime. In other words, it must be proved by the state that the defendant entered or remained within a building with intent to commit a crime therein. Intent is a mental state with a resolve or determination that the doing of an act shall be with a certain purpose. Intent is seldom, if ever, capable of direct or positive proof. Rather, the intent, if any, may be arrived at by such reasonable inferences and deductions as may be drawn from the facts proved by the evidence in accordance with common experience and observation.

"The best way to prove that entry or remaining in a building was with intent to commit a crime was to prove that the person actually did commit the intended crime therein. If, however, the defendant never actually committed some crime on the premises or was apprehended before he had the time to commit one, his unlawful entry or remaining may still be found to be burglary if the evidence establishes to your satisfaction beyond a reasonable doubt that the defendant was there with such intention. Whether the criminal intent existed at the time of the commission of the alleged criminal act must, of necessity, be inferred and found from other facts which in their nature are the subject of specific proof and for this reason other constituents

of the crime being proved, it will be left to you to determine from all of the circumstances whether this criminal intent existed. . . .

"The state here contends that the defendant was unlawfully in a building intending to commit the crime of robbery. Whether or not the state has proved such intention is one of the matters you must decide, but even if you find that the intention to commit such specific crime was not proved, you may still convict [the defendant] of burglary if you are convinced that he intended to commit some crime and was in the building for that purpose.

"The state is not required to prove specifically what crime was intended by the defendant or that he actually committed any crime whatever in the premises. The required intention must be spelled out, if at all, from the evidence of the defendant's conduct and other facts and circumstances.

"If you find that the proof presented is sufficient for you to infer that the defendant intended to commit a crime within the building, you may find him guilty of burglary. If you find it is not so, you must find him not guilty of burglary."

The defendant's exception to these instructions was imprecise. It did, however, sufficiently apprise the court of its basic legal nature. The exception was extended over several responses to the court's inquiries as follows:

"The Court: Mr. Lewis, do you have an exception?

"Mr. Lewis: Yes, your Honor, to the charge on the intent.

"The Court: Yes?

"Mr. Lewis: I believe the way it was phrased your Honor placed the burden on the defendant to prove the intent—the defendant to prove he had no intent.

"The Court: Which charge were you referring to?

"Mr. Lewis: Both the robbery and the burglary charge, your Honor. I believe, based on the instruction your Honor gave, that they would consider that the burden is on the defendant to prove intent, lack thereof.

"The Court: I don't believe I said that, Mr. Lewis.

"Mr. Lewis: No, I just say the way it was phrased.

"The Court: Pardon?

"Mr. Lewis: You did not say it that way, but I believe the way it was phrased in coming out your Honor placed the burden on the defendant, not on the state.

"The Court: Well, if you would like for me to charge the jury that the burden of intent remains on the state, I would be happy to do that.

"Mr. Lewis: I think that would be appropriate.

"The Court: Do you have any problem with that?

"Mr. Lyons: Well, the only problem is the vague objection. What's he referring to?

"The Court: Well, I don't know either.

"Mr. Lewis: I am basing it on *Sandstrom* v. *Montana.*

"The Court: What language did I use?

"Mr. Lewis: The language, as I recall it, was that at the time the intent can be proven by the circumstances under which the offense took place. Not that the state has the burden of proving that the intent was there at the time it took place. It's a matter of semantics.

"The Court: Well, if that's your reason, I will deny your request. You can take an exception.

"Mr. Lewis: Exception, your Honor."

The defendant's claim of error, like his exception to the charge, is inartfully stated. The gravamen of his claim is that the court's charge on intent, taken in conjunction with its earlier instructions on circumstantial evidence and inferences, "impermissibly shifted the state's burden of proof" because "the jurors were obligated to draw their factual conclusions as to intent in the burglary charge based on the erroneous circumstantial evidence/inference instructions." This shift of burden, he claims, was in violation of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), because of "the court's failure to instruct the jury that 'inferred facts' as well as 'basic facts' must be proved beyond a reasonable doubt" to establish every element of the crime. It is clear, however, that the court's charge was totally free of the language of presumed intent which was found to be erroneous in *Sandstrom.* In support of this argument, the defendant also cites *State* v. *Rodgers,* 198 Conn. 53, 59, 502 A.2d 360 (1985). Although the defendant did not preserve this claim of error at trial, it is reviewable on appeal pursuant to *State* v. *Evans,* supra. *State* v. *Hoeplinger,* 9 Conn. App. 147, 157–58, 517 A.2d 632 (1986).

The court's charge on circumstantial evidence and inference challenged by this claim was as follows: "This case is one that is based upon circumstantial evidence, that is the fingerprints. Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting the fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence, offer of facts [from] which you are asked to infer the existence of another fact or set of facts. Such an inference may be [made] provided two elements [in] the application of this rule [are] satisfied when: One, that the fact from which you are asked to draw the infer-

ence has itself been proven beyond a reasonable doubt, and two, that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find that *it is more probable than not that the fact to be inferred is true.*" (Emphasis added.)

This instruction on circumstantial evidence and inferences drawn therefrom is identical to that found erroneous in *State* v. *Rodgers,* supra. In *Rodgers,* the court found error in the instruction "that an inference may be drawn if 'it is more probable that the fact to be inferred is true' [because] [t]he facts essential to an element of the crime . . . whether basic or inferred, must be found proved beyond a reasonable doubt." Id., 59–60.

Although this singular part of the charge was erroneous per se, we do not view portions of the jury instructions in a vacuum. We review the entire charge as a whole to determine whether it was reasonably possible that the jury was misled. See *State* v. *Whelan,* 200 Conn. 743, 756, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 1598 (1986); *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). In order to make this determination, we need to give a further account of the evidence supporting the defendant's conviction.

The defendant steadfastly denied having been in the victim's apartment. There was no eyewitness identification of the defendant. The only direct evidence linking the defendant with the crime were his four fingerprint impressions lifted from two empty silverware storage chests in the victim's apartment. The element of intent was never placed in issue by the defendant at trial until he excepted to the court's charge on intent. Only then did the defendant dispute intent. This objection, of course, was made after the close of all evidence per-

taining to the issues raised before the jury, including the question of identification, which it had to resolve factually based upon the testimony of the witnesses and the exhibits before it.

We find that the principal issue before the jury in this case was the identity of the defendant as one of the perpetrators, which the state claimed it established through the four fingerprints identified in evidence as his. Reading the trial court's instructions as a whole, we conclude that it was not reasonably possible that the jury was misled by the court's charge with respect to the state's burden of proving intent beyond a reasonable doubt. In both its general instructions and its specific instructions on intent, the court instructed the jury several times that the state carried the burden of proof beyond a reasonable doubt. The trial court gave the erroneous instruction on inferences but once, and did not repeat it when defining the essential elements of the burglary and other charges. The error, therefore, does not require a reversal of the conviction. See *State* v. *Reddick,* supra, 132; *State* v. *Walker,* 9 Conn. App. 373, 519 A.2d 83 (1986); *State* v. *Hoeplinger,* supra, 160–61; *State* v. *Farrar,* 7 Conn. App. 149, 156, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).[3]

There is no error.

In this opinion the other judges concurred.

---

[3] The defendant's brief also alleges that the court failed to recite the statutory definition of intent. The transcript reveals that the court gave a definition of intent which was substantially similar to the statutory definition. The court's failure to give the statutory definition of intent was not error. See *State* v. *Mason,* 186 Conn. 574, 587, 442 A.2d 1335 (1982); *State* v. *Walker,* 9 Conn. App. 373, 519 A.2d 83 (1986).