STATE OF CONNECTICUT *v.* DAVID M. MCKENNA
(3728)

DUPONT, C. J., BORDEN and SPALLONE, Js.

---

Argued December 4, 1986—decision released May 26, 1987

*Richard Emanuel,* for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Peter Ponziani,* former assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing from a judgment of conviction, after a trial to a jury, of the crime of manslaughter in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-56b (a). The defendant contends that the trial court erred (1) in failing to find that General Statutes § 53a-56b is void for vagueness, (2) in charging the jury erroneously, (3) in admitting into evidence the results of an intoximeter test, and (4) in admitting into evidence certain photographs of the victim.

From the evidence introduced at trial, the jury could reasonably have found the following facts. On April 12, 1983, shortly before 10 p.m., on a night when the weather was dry and clear, the victim was operating her motor vehicle in a westerly direction on Route 84 in Manchester. The highway, at the time and place concerned, consisted of three westbound lanes and was

well illuminated. The defendant, who was driving at a speed of seventy-five to eighty-six miles per hour, struck the victim's vehicle from behind causing it to flip over onto the grassy center median, where it came to rest on its roof, with the victim pinned under the car. The victim, who was sixty-six years of age, died as a result of the accident. When the defendant was approached by an investigating police officer, he stated, "I was driving. I killed her." The defendant had no external injuries and was rude, obscene and somewhat confused in his interplay with witnesses at the scene. He showed poor coordination and swayed and staggered as he walked. The defendant's breath indicated he had been drinking alcoholic beverages. When given performance tests by a state trooper, he was hesitant in the finger-to-nose test, was unable to follow the trooper's instructions when asked to walk a straight line, and could not complete a recitation of the alphabet. Both the trooper and an ambulance medical technician who responded to the accident testified that, based on their observations of the defendant at the scene of the accident, he was intoxicated. The defendant was given an intoximeter breath test at 10:48 p.m., which indicated that his blood alcohol level at that time was .152 percent. Expert testimony revealed that at 10 p.m., the time of the accident, the defendant's blood alcohol level would have been .17 percent.

The defendant was charged with manslaughter in the second degree with a motor vehicle while intoxicated, a violation of General Statutes § 53a-56b (a), operating without insurance, a violation of General Statutes § 14-213b, and following too closely, a violation of General Statutes § 14-240. Subsequently, the defendant pleaded nolo contendere and was fined on the latter two charges. He elected a jury trial on the first count and was found guilty and sentenced. This appeal followed.

The defendant's first claim, that General Statutes § 53a-56b is void for vagueness, was not raised at trial. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). " 'The policy behind this rule is both ancient and sound and "does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on appeal." ' " *State* v. *Hinckley,* 198 Conn. 77, 81, 502 A.2d 388 (1985). Nevertheless, because the defendant's vagueness claim implicates a fundamental constitutional right; *State* v. *Cavallo,* 200 Conn. 664, 667, 513 A.2d 646 (1986); *State* v. *Pickering,* 180 Conn. 54, 60, 428 A.2d 322 (1980); *State* v. *Liebowitz,* 7 Conn. App. 403, 405, 509 A.2d 43 (1986); and the record provides adequate support to review the claim; *State* v. *Evans,* supra; we will review this claim to determine whether a fundamental constitutional right was actually violated. *State* v. *Huff,* 10 Conn. App. 330, 333–34, 523 A.2d 906 (1987); *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891 (1987); cf. *State* v. *Liebowitz,* supra (no *Evans* review of vagueness claim where record did not clearly support that allegedly vague statute was the basis for the defendant's conviction).

The defendant does not claim that General Statutes § 53a-56b is vague on its face, but only as applied to his particular conduct.[1] His claim is that the term

---

[1] The defendant would have standing to challenge the validity of the statute on its face only if the "challenged statute, if vague, could intrude on fundamental constitutional guarantees such as first amendment rights . . . ." *State* v. *Cavallo,* 200 Conn. 664, 670, 513 A.2d 646 (1986); see *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *United States* v. *Mazurie,* 419

"intoxication," an essential element of General Statutes § 53a-56b,[2] is unconstitutionally vague as applied to him. In reviewing this claim, we must determine whether the term "intoxication" as used in the statute "has a meaning sufficiently precise for a man of average intelligence to 'reasonably understand that his contemplated conduct is proscribed.' " *United States* v. *Mazurie,* 419 U.S. 544, 553, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975), quoting *United States* v. *National Dairy Products Corporation,* 372 U.S. 29, 32–33, 83 S. Ct. 594, 9 L. Ed. 2d 561, reh. denied, 372 U.S. 961, 83 S. Ct. 1011, 10 L. Ed. 2d 13 (1963); see also *State* v. *Cavallo,* supra. Where, as here, the complainant challenges the statute as applied to his particular conduct rather than on its face, "the complainant must prove that the enactment is vague ' "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates* v. *City of Cincinnati,* 402 U.S. 611, 614 [91 S. Ct. 1686, 29 L. Ed. 2d 214] (1971).' " *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* 455 U.S.

U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975); *State* v. *Pickering,* 180 Conn. 54, 57 n.3, 428 A.2d 322 (1980). The defendant makes no claim that the statute implicates any such fundamental constitutional rights so as to entitle him to challenge the statute on its face.

[2] At the time of the incident, General Statutes (Rev. to 1983) § 53a-56b (a) provided: "A person is guilty of manslaughter in the second degree with a motor vehicle while intoxicated when, in the consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For the purposes of this section, intoxication shall include intoxication by alcohol or by drug or both."

This statute was amended by Public Acts 1985, No. 85-147, effective on October 1, 1985. This amendment, in part, deleted the term "intoxication" from the statute and substituted in its place the phrase "under the influence of intoxicating liquor." The statute currently provides: "A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug." General Statutes § 53a-56b (a).

489, 495 n.7, 102 S. Ct. 1186, 71 L. Ed. 2d 362, reh. denied, 456 U.S. 950, 102 S. Ct. 2023, 72 L. Ed. 2d 476 (1982).

We find that General Statutes § 53a-56b is not unconstitutionally vague as applied to the defendant. The defendant essentially claims that because the statute provides no definition of the term "intoxication," even though the term has been defined in more than one manner,[3] the statute does not adequately define the

[3] The defendant points to the following definitions of the term intoxication:

(1) The definition in General Statutes § 53a-7, which, by its terms is confined to that particular section of the penal code: " 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

(2) The definition of "driving under the influence of intoxicating liquor," as formulated by our Supreme Court when construing what is now General Statutes § 14-227a: intoxication is established "when the evidence shows that the driver of an automobile, by reason of having drunk intoxicating liquor, had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree, the ability to function properly in relation to the operation of the machine." This definition, first formulated in *State* v. *Andrews,* 108 Conn. 209, 216, 142 A. 840 (1928), has been followed by later courts. See text, infra.

(3) The definition provided by the court in *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 349–50, 493 A.2d 184 (1985), which involved an action under General Statutes § 30-102, the "dram shop" act (which contains the phrase "in consequence of such intoxication"): "To be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor. Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies. When it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when these or similar symptoms result from the use of liquor and are manifest, a person may be found to be intoxicated. He need not be 'dead-drunk.' It is enough if by the use of intoxicating liquor he is so affected in his acts or conduct that the public or parties coming in contact with him can readily see and know this is so." Id.

(4) A court could conclude that "intoxication" has an ordinary meaning, and that no specific definitional criteria are needed. See *State* v. *Katz,* 122 Conn. 439, 442–43, 189 A. 606 (1937) (sale of liquor to intoxicated person under forerunner to General Statutes § 30-86).

conduct that it purports to prohibit. There can be no question, however, that under the facts of this case the defendant's conduct was proscribed under any of the interpretations he has suggested. At the time of the accident, the defendant had a blood alcohol level of approximately .17 percent; two eyewitnesses testified that he was intoxicated; he had been driving his car somewhere between seventy-five and eighty-six miles per hour when he struck the victim; although he had no apparent injuries other than a back sprain, his speech was slurred and he staggered and weaved as he walked; he admitted to having consumed alcoholic beverages before the accident; and his breath smelled of alcohol at the accident site. A reasonable person would know that the drinking and driving behavior engaged in by the defendant is encompassed by the reference in § 53a-56b to "intoxication while operating a motor vehicle." The defendant was therefore a "hard-core" violator to whom the statute was not vague. See State v. Pickering, supra, 65; see also State v. Katz, 122 Conn. 439, 442–43, 189 A. 606 (1937) (term "intoxicated person" in statute prohibiting sale of liquor to intoxicated person not so indefinite as to render statute unenforceable).

The defendant's second claim focuses on alleged errors in the jury instructions. He claims that the court (1) incorrectly defined "intoxication" as an element of the crime, (2) failed to give the defendant's requested charge on the lesser included offense of negligent homicide, and (3) diluted the jury's perception of the state's burden of proof by instructing that an inference could be drawn if it was "more probable than not that the fact to be inferred is true."

The defendant neither submitted a request to charge on the element of intoxication nor did he object to the court's charge on this issue. Consequently, we will review this claim of error only if it qualifies for review

under *State* v. *Evans,* supra. The defendant claims that his right to due process of law was violated because the court's definition of intoxication was actually a definition of the less stringent standard of "under the influence," thereby allowing the jury to convict the defendant on less than proof beyond a reasonable doubt of every essential element of the crime. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Because this claim on its face raises an issue that implicates a fundamental constitutional right, the defendant has satisfied the first requirement of *Evans* review. See *State* v. *Huff,* supra, 334; *State* v. *Thurman,* supra, 306. We therefore will "review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant." *State* v. *Huff,* supra; *State* v. *Thurman,* supra. Our limited review of the record reveals that this claim is not truly of constitutional proportions.

The court instructed the jury as follows: "With respect to the second element regarding intoxication, in view of the statute and in view of all the other evidence in this case you have to determine was the amount of liquor consumed by the accused of such an amount more or less sufficient to so affect his mental, nervous and physical processes that he lacked to an appreciable degree the ability to function properly with relation to the operation of his automobile." The court's instruction was similar to and apparently derived from previous judicial constructions of the terms "under the influence of intoxicating liquor" that first originated with the Supreme Court's decision in *State* v. *Andrews,* 108 Conn. 209, 216, 142 A. 840 (1928). See General Statutes § 14-227a (a); *Higgins* v. *Champ,* 161 Conn. 200, 203, 286 A.2d 313 (1971); *Infeld* v. *Sullivan,* 151 Conn. 506, 509, 199 A.2d 693 (1964); *State* v.

*Switchenko,* 3 Conn. Cir. Ct. 511, 515, 217 A.2d 484 (1965); see also footnote 3, supra. The defendant claims that the charge is erroneous because both the Supreme Court in *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 349–50, 493 A.2d 184 (1985),[4] and the legislature when amending General Statutes § 53a-56b have recognized a distinction between the state of being "under the influence of intoxicating liquor" and being "intoxicated."

We disagree. The defendant appears to suggest that the Supreme Court and the legislature have recognized varying states of inebriation, with the state of being "under the influence" of intoxicating liquor referring to a lesser level than "intoxication." Neither the legislative history of General Statutes § 53a-56b nor Supreme Court precedent, however, supports the conclusion that the phrase "under the influence" of intoxicating liquors refers to a different level of inebriation than "intoxication." It is true that the legislature amended General Statutes § 53a-56b in 1985 to replace the term "intoxication" with the phrase "under the influence of intoxicating liquor." See Public Acts 1985, No. 85-147 § 1; see also footnote 2, supra. The legislative history of this amendment, however, provides no indication that the legislature intended to change the meaning of the statute so as to lower the level of inebriation necessary for a conviction. Rather, the intent of the amendment was to clarify the meaning of the statute in response to a lower court opinion that apparently did hold that there was a distinction between these two phrases. The legislators speaking on the bill indicated that, because of this lower court opinion, there was a "loophole" in the law that could be remedied by substituting the "under the influence" language.[5] The

---

[4] See footnote 3, supra.

[5] The following remarks by Representative Edith G. Prague at the Judiciary Committee hearing on February 20, 1985, are typical: "This Bill [H.B.

apparent intent of the legislature in enacting the amendment, therefore, was not to alter the nature of the conduct proscribed by the statute, but to correct a "language flaw" in the statute that had arisen as a result of a lower court decision. " 'An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act.' " *Shelton* v. *Commissioner,* 193 Conn. 506, 514, 479 A.2d 208 (1984), quoting *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); see also *State* v. *Blasko,* 202 Conn. 541, 556–57, 522 A.2d 753 (1987). Furthermore, we note that where the legislature *has* distinguished between levels of inebriation, it has not distinguished the phrase "under the influence of intoxicating liquor" from "intoxication." See General Statutes § 14-227a (distinguishing driving while under the influence [blood alcohol .10 or greater] from driving while impaired

7433] will change the language from driving while intoxicated to driving under the influence of intoxicating liquor or drugs or both and will create conformity in the language of the two criminal statutes concerning DWI. Changing the language from driving while intoxicated to driving under the influence of intoxicating liquor or drugs or both will allow the prosecution to proceed without the complications that this present language presents.

"People who monitor the DWI cases in the courts have been outraged by the criminal getting off because of a loophole or a language flaw in the law which allows this to happen. This is an important Bill in the overall effort to tighten up our drunk driving laws." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1985 Sess., p. 332.

Further, Representative Robert F. Frankel remarked during the House debate: "Yes, Mr. Speaker, I'd like to attempt to try to assist the Chamber in understanding the reason for the amendment. The file copy was designed to correct a problem that arose from a court decision. It was an attempt to use the right definition for under the influence, because in that court case, someone escaped from being found guilty because the statute that is on the books today, talks about intoxication, instead of about the words, 'under the influence,' and that is what the file copy tried to do, to put the words, 'under the influence' in, and take the word, 'intoxication' out, because the courts interpret them differently, and the file copy would indeed make the law more tough on drunk drivers . . . . " 28 H.R. Proc., Pt. 9, 1985 Sess., pp. 3129–30.

[blood alcohol less than .10 but more than .07]; *State v. Hancich,* 200 Conn. 615, 619–21, 513 A.2d 638 (1986). We therefore find no support in the legislative history of General Statutes § 53a-56b that the phrase "under the influence" of intoxicating liquor refers to a different level of inebriation than the term "intoxication."

Nor does our Supreme Court precedent support such a distinction.[6] While the Supreme Court in *Sanders* v. *Officers Club of Connecticut, Inc.,* supra, 349, stated that "[t]o be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor," the court gave no indication that its definition of intoxication was intended as a departure from its previous interpretations of the term "under the influence" of intoxicating liquor. On the contrary, in the same paragraph, the court stated: *"When it is apparent that a person is under the influence of liquor,* when his manner is unusual or abnormal and is reflected in his walk or conversation . . . *a person may be found to be intoxicated. "* (Emphasis added.) Id., 349–50. Furthermore, the definition of intoxication in *Sanders* is substantially similar to the definition of "under the influence" provided by the trial court in following the *Andrews* line of authority. Both lines of authority emphasize that the alcohol or drug must cause a significant impairment of mental or physical functioning. *Sanders* spoke of intoxicating liquors causing a "derangement or impairment of physical functions";

---

[6] Other jurisdictions differ as to whether the term "intoxicated" is to be interpreted differently from the term "under the influence" of intoxicating liquor. See *Taylor* v. *Joyce,* 4 Cal. App. 2d 612, 41 P.2d 967 (1935) (no difference); *State* v. *Davis,* 196 N.W.2d 885 (Iowa 1972) (same); *State* v. *Cox,* 478 S.W.2d 339 (Mo. 1972) (same); cf. *Jackson* v. *State,* 456 So. 2d 916 (Fla. Dist. Ct. App. 1984) (terms not synonomous); *Commonwealth* v. *Connolly,* 394 Mass. 169, 172, 474 N.E.2d 1106 (1985) (person need not be "drunk" to be convicted of driving under the influence).

id., 349; while the trial court here spoke of liquor as causing the lack *"to an appreciable degree* [of] the ability to function properly." (Emphasis added.) Cf. General Statutes § 53a-7 ("intoxication" in the penal code is defined as "a substantial disturbance of mental or physical capacities resulting from the introduction of substances in the body"). We find, therefore, that the court's instruction on the term "intoxication," despite its similarity to instructions that have been labeled as instructions on "under the influence," was substantially similar in meaning to the definition of "intoxication" approved by our Supreme Court in *Sanders,* and that the instruction, therefore, did not unconstitutionally diminish the state's burden of proof.

The defendant also claims error in the court's refusal to charge on the lesser included offense of negligent homicide. General Statutes § 14-222a. We find no merit to this claim.

A defendant does not have a constitutional right to an instruction on a lesser included offense. *State* v. *Ostroski,* 201 Conn. 534, 557, 518 A.2d 915 (1986); *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986); *State* v. *Whistnant,* 179 Conn. 576, 581, 427 A.2d 414 (1980). "The right to such an instruction is purely a matter of common law as set forth in *Whistnant . . . ."* *State* v. *McIntosh,* supra. Here, the defendant's request to charge on the lesser included offense failed to conform to our rules of practice, thereby failing to satisfy the first prong of the four-part *Whistnant* test. *State* v. *Whistnant,* supra, 588. Practice Book § 852 provides in pertinent part: "Requests shall be in separate and numbered paragraphs, each containing a single proposition of law *clearly and concisely stated with the citation of authority upon which it is based, and the facts supported by the evidence to which the proposition would apply. . . .* " (Emphasis added.) The request in this

case failed to refer to any facts or authority.[7] " '[A]n "appropriate instruction" under *State* v. *Whistnant* must contain " 'a complete statement of the essential facts as would have justified the court in charging in the form requested.' " ' " *State* v. *Ostroski,* supra, 558. Here, as in *Ostroski,* the defendant's request contains no facts whatsoever. Further, in *Ostroski,* the Supreme Court observed that "[w]hile this court does not favor unyielding adherence to 'rules of procedure where the interests of justice are thereby diserved' . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instructions. 'The minor burden of cooperation imposed by this section is neither unreasonable nor novel.' " (Citation omitted.) Id., 558, quoting *State* v. *McIntosh,* supra, 161. We therefore find no error in the trial court's failure to instruct the jury on the elements of General Statutes § 14-222a.

The defendant also avers error in the court's charge on circumstantial evidence. The court instructed the jury that it could draw an inference if it was "more probable than not that the fact to be inferred is true." Despite the fact that the defendant concedes that he neither filed a written request to charge nor excepted to this challenged portion of the charge, we will follow recent precedent and review this claim under *State* v. *Evans,* supra. *State* v. *Miller,* 202 Conn. 463, 489–90, 522 A.2d 249 (1987); *State* v. *Smith,* 201 Conn. 659, 672, 519 A.2d 26 (1986); *State* v. *Whelan,* 200 Conn. 743, 755–56, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v.

---

[7] The defendant's request to charge, which was handwritten, provided: "The defendant respectfully requests that the court charge the jury that if they find him not guilty of Manslaughter 2nd with a Motor Vehicle while intoxicated and Misconduct with a Motor Vehicle, they then may consider whether he is guilty or not guilty of Negligent Homicide with a Motor Vehicle (Sec. 14-222a)."

*Hoeplinger,* 9 Conn. App. 147, 158, 517 A.2d 632 (1986), cert. granted, 202 Conn. 805, 520 A.2d 1286 (1987); *State* v. *Farrar,* 7 Conn. App. 149, 153 n.3, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

Both this court and our Supreme Court have recently and thoroughly considered the ramifications of a jury instruction in a criminal case that informs a panel that it may infer a fact when it is more probable than not that such a fact exists. See *State* v. *Miller,* supra, 489–92; *State* v. *Mullings,* 202 Conn. 1, 11–14, 519 A.2d 58 (1987); *State* v. *Smith,* supra; *State* v. *Whelan,* supra; *State* v. *Rodgers,* 198 Conn. 53, 56–60, 502 A.2d 360 (1985); *State* v. *Reddick,* 197 Conn. 115, 130–31, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State* v. *Smith,* 10 Conn. App. 624, 641, 525 A.2d 116 (1987); *State* v. *Dullivan,* 10 Conn. App. 474, 477, 523 A.2d 1353 (1987); *State* v. *Perez,* 10 Conn. App. 279, 282–91, 523 A.2d 508 (1987); *State* v. *Acklin,* 9 Conn. App. 656, 664–66, 521 A.2d 160 (1987); *State* v. *McDonough,* 9 Conn. App. 631, 633–39, 521 A.2d 160 (1987); *State* v. *Walker,* 9 Conn. App. 373, 376–77, 519 A.2d 83 (1986); *State* v. *Hoeplinger,* supra; *State* v. *Farrar,* supra, 152–53. Such an instruction is erroneous because, as applied to inferences for the finding of facts that are essential elements of the crime, it unconstitutionally dilutes the state's burden of proving guilt beyond a reasonable doubt. See *State* v. *Whelan,* supra, 757; *State* v. *Rodgers,* supra, 57–59. Although such an instruction is erroneous in the abstract because of its overinclusiveness, it does not follow that reversal is always required. Reversal is necessary only if it is reasonably possible that the jury was misled by the trial court's instructions. *State* v. *Mullings,* supra, 14; *State* v. *Reddick,* supra, 132.[8]

[8] In addition, under the United States Supreme Court's holding in *Rose* v. *Clark,* 478 U.S. 570, 106 S. Ct. 3101, 3109, 92 L. Ed. 2d 460 (1986), the

When determining whether the circumstantial evidence-inference charge is reasonably likely to have misled the jury, our courts have focused on the bearing that the instruction has on the principal disputed factual issues in the case. *State* v. *Mullings,* supra, 12; *State* v. *Smith,* supra, 673; *State* v. *Walker,* supra, 376; *State* v. *Farrar,* supra, 156. When the state relies primarily on circumstantial evidence to prove a disputed central issue of fact, we subject the erroneous charge to "close scrutiny." *State* v. *Whelan,* supra; *State* v. *Farrar,* supra, 155. If, on the other hand, the principal disputed issues are not proved primarily by circumstantial evidence, " 'the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence.' " *State* v. *Whelan,* supra, quoting *State* v. *Farrar,* supra, 155–56. In these cases, the jury will have had less occasion to utilize the erroneous instruction, and an appellate court should examine the whole charge to determine if the error was cured by other portions of the charge.

The central, disputed issue of fact in this case was whether the defendant was intoxicated. While the state relied on both direct and circumstantial evidence to prove this fact, the direct evidence was particularly substantial. Two witnesses who observed the defendant's behavior at the scene of the accident testified that he was intoxicated.[9] This was direct evidence, in the form

state may also attempt to prove that the error was harmless beyond a reasonable doubt. *State* v. *Perez,* 10 Conn. App. 279, 285–90, 523 A.2d 508 (1987).

[9] Because "[t]he condition of intoxication and its common accompaniments are a matter of general knowledge"; *State* v. *Jones,* 124 Conn. 664, 667, 2 A.2d 374 (1938); *Way* v. *Pavent,* 179 Conn. 377, 380, 426 A.2d 780 (1979); *State* v. *Katz,* 122 Conn. 439, 442, 189 A. 606 (1937); *Thomas* v. *Rose,* 10 Conn. App. 71, 74, 521 A.2d 597 (1987); our Supreme Court has held that laymen may testify as to their opinion of whether a person is intoxicated.

of opinion. Both witnesses rendering these opinions provided a more than adequate foundation for their conclusions.[10] In addition, there was testimony that a doctor who had examined the defendant had stated to the victim's granddaughter that "the kid that did hit [the victim] was drunk." Furthermore, the defendant had before it direct evidence of the defendant's blood alcohol content at the time of the accident. Because of the substantial direct evidence on the issue of intoxication, we will review the charge as a whole. See *State* v. *Mullings,* supra, 13; *State* v. *Smith,* 201 Conn. 659, 673, 519 A.2d 26 (1986); *State* v. *Walker,* supra, 376 (reviewing charge as a whole where there is substantial direct evidence).

Viewed as a whole, it was not reasonably possible that the trial court's erroneous instruction concerning circumstantial evidence misled the jury. The erroneous instruction was given only once during that portion of the charge explaining the use of circumstantial evidence in drawing inferences. *State* v. *Mullings,* supra; *State* v. *Farrar,* supra, 156. In addition, when instructing

---

*State* v. *Jones,* supra; see also J. Wigmore, Evidence (Chadbourn Rev. 1986) § 1974; C. Tait & J. LaPlante, Connecticut Evidence § 7.15 (c).

[10] Both Thomas Kerrigan, a state trooper, and Raymond Shedd, an emergency medical technician, testified that the defendant was intoxicated when they observed him at the scene of the accident. Kerrigan testified that he detected an odor of alcohol on the defendant's breath and that the defendant admitted he had been drinking. Kerrigan administered certain performance tests to the defendant: he described the defendant's performance on the "finger-to-nose" test as "fair" but done with "some hesitance"; he testified that the defendant was off balance and swaying during the "toe to heel" straight walk; and he stated that the defendant was unable to complete a recitation of the alphabet. Shedd also testified that the defendant had an odor of alcohol on his breath. He described the defendant as "rude and obscene, somewhat confused"; "agitated and confused"; and not "very coherent." He also testified that the defendant's motor coordination was not proper, stating that there was "a bit of swaying and some staggering, walking in circles," when the defendant stood up to walk away. Shedd further testified that he had occasion "close to a thousand" times in the past to view persons who had been intoxicated.

on the essential elements, the court stated that each essential element, including intoxication, had to be proven beyond a reasonable doubt. See *State* v. *Walker*, supra, 376–77. Moreover, the court made repeated references to the state's burden of proof beyond a reasonable doubt, and properly instructed the jury on the presumption of innocence. *State* v. *Mullings*, supra; *State* v. *Farrar*, supra. We therefore find no reversible error with respect to this claim.

The defendant next claims that the trial court erred in denying his motion to dismiss and in admitting into evidence the result of an intoximeter test. The defendant asserts he was denied due process when the trial court admitted into evidence what the defendant now claims was the unreliable result of an intoximeter test. Our review of the record, however, reveals that the defendant did not raise this specific issue before the trial court. There, he asserted his due process rights were violated because he did not have adequate notice of the legal testing procedures. This court will not consider claims that were not distinctly raised and ruled upon at trial. Practice Book § 4185 (formerly § 3063); *State* v. *Moye*, 199 Conn. 389, 397, 507 A.2d 1001 (1986). Furthermore, the defendant has not claimed that this issue should be reviewed under *State* v. *Evans*, supra. We therefore decline to review this claim. See *State* v. *Milledge*, 8 Conn. App. 119, 125, 511 A.2d 366 (1986).

Finally, the defendant claims that the court erred in admitting into evidence photographs of the victim taken after her death. The defendant claims that the photographs were particularly gruesome and had no overriding probative value. The state asserts that the photographs were material to show that the victim died as a result of the accident caused by the defendant, which was an element of the state's burden of proof. The trial court, in admitting the photographs, ruled that

because they were not in color or unduly inflammatory they would not improperly influence the jury. We find no error in this ruling.

Photographic evidence is admissible where the photograph has a reasonable tendency to prove or disprove a material fact in issue. *State* v. *DeJesus,* 194 Conn. 376, 381, 481 A.2d 1277 (1984). There is no requirement that a potentially inflammatory photograph be essential to the state's case in order for it to be admissible. Rather, the test for admitting the challenged evidence is its relevancy, not its necessity. *State* v. *Haskins,* 188 Conn. 432, 453, 450 A.2d 828 (1982); *State* v. *Piskorski,* 177 Conn. 677, 701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Even if a photograph has the potential to prejudice the jury, it may be admitted if, in the court's discretion, its probative value outweighs its possible prejudicial effect. *State* v. *DeJesus,* supra, 382; *State* v. *Haskins,* supra, 452–53. The trial court has wide discretion when weighing a photograph's potential prejudice against its probative value. *State* v. *DeJesus,* supra; see also *State* v. *Doehrer,* 200 Conn. 642, 649, 513 A.2d 58 (1986); *State* v. *Delgado,* 8 Conn. App. 273, 288–89, 513 A.2d 701 (1986). We see nothing in the court's decision that would support any allegation that it abused its discretion in admitting the photographs into evidence.

There is no error.

In this opinion the other judges concurred.